UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ESTATE OF MATTHEW LEE RICHARDS, *et al.*,

Plaintiffs,

v.

KERN COUNTY SHERIFF'S OFFICE, *et al.*,

Defendants.

Case No. 1:24-cv-01294-CDB

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

(Doc. 34)

**14-Day Deadline**

Pending before the Court[1] is the motion of Defendants County of Kern, Kern County Sheriff's Office ("KCSO"), Donny Youngblood, Zachary Bittle, Jose Perez, Rodolfo Ramirez, Connor Bray, and Marcus Kochanski (collectively, "Defendants") to dismiss claims asserted in the operative first amended complaint. (Doc. 34). On January 23, 2026, Plaintiffs Estate of Matthew Lee Richards, Derrienne Richards, and Robert William Richards (collectively, "Plaintiffs") filed an opposition to the motion to dismiss, and on February 2, 2026, Defendants filed a reply. (Docs. 35, 36).

///

///

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on March 25, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 18).

I.      **Background**

On October 23, 2024, Plaintiffs initiated this action with the filing of a complaint.  (Doc. 1).  Plaintiffs filed the operative first amended complaint ("FAC") on November 26, 2025.  (Doc. 27).

In the FAC, Plaintiffs allege that, on September 2, 2023, Matthew Lee Richards ("Decedent") was arrested by the California Highway Patrol and detained at the Kern County Sheriff's Office Mojave Substation Jail in Mojave, California.  (Doc. 27 ¶ 34).  "Upon information and belief, [Decedent] met with Defendant [Connor Bray] (KCSO Classification Deputy) upon booking and expressed concerns regarding his substance abuse."  Despite "obvious signs" that Decedent "suffered from substance abuse," Decedent was placed in the general population without any designation that would alert those in charge of his care that he required further monitoring and follow-up care regarding his medical status or mental health conditions.  *Id.* ¶ 35.

"Upon information and belief, [Decedent] never underwent an initial medical and/or mental health screening" while in custody.  On September 3, 2023, Decedent was housed alone and, between 11:52 a.m. and 12:07 p.m., Decedent was "observed on surveillance footage fashioning a noose around his neck while attempting to find a location in his cell to affix the other end."  At approximately 1:03 p.m., Decedent was "observed hanging with a shoestring tied around his neck with the other end affixed to the railing of his bunk bed."  Decedent was found in the cell at approximately 1:29 p.m. by Defendant Ramirez.  Decedent was unresponsive.  *Id.* ¶¶ 36-38.

At approximately 1:30 p.m., Defendant Ramirez "opened [Decedent's] cell door to begin administering CPR and other lifesaving measures.  These lifesaving measures came too late, and the paramedics arrived shortly thereafter at 1:38 p.m."  Decedent was transported to Antelope Valley Medical Center and was pronounced dead the following day, September 4, 2023, at 6:43 a.m. *Id.* ¶ 40.

Defendant Ramirez was assigned as floor deputy at the Mojave Substation Jail on September 3, 2023, and was "responsible for ensuring the supervision and monitoring of inmates at the Mojave Substation Jail including [Decedent]."  Shortly after the incident, Defendant Kochanski, a senior deputy, was assigned to investigate the circumstances surrounding Decedent's

death. Kochanski "conducted an investigation that served to shield" Defendants Ramirez and Bray from liability, "failed to properly investigate [Decedent's] death by omitting material facts provided to him during witness interviews," conducted "cursory and superficial interviews of key witnesses," and manufactured "witness recollection in an attempt to ensure" Defendants Ramirez and Bray would not be disciplined. *Id.* ¶¶ 41-43.

Regarding the claims of municipal liability, Plaintiffs assert that in 2023 there were eleven in-custody deaths, including five from natural causes and six suicides, within KCSO jails. *Id.* ¶ 52. Plaintiffs allege Decedent was one of the six suicides in 2023 and the eighth death of the calendar year. *Id.* ¶ 53. Plaintiffs further allege that, from January 2008 to December 2023, 22 inmates have died by suicide in jails within the County of Kern. *Id.* ¶ 54. Plaintiffs' FAC provides factual background for ten other deaths within County facilities. *See id.* ¶¶ 55-65.

## II.    Governing Authority

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court

must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). And "even 'well-pleaded facts' are not sufficient if they are accompanied by only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gibson v. City of Portland*, -- F.4th --, 2026 WL 235118, at *16 (9th Cir. Jan. 29, 2026) (quoting *Iqbal*, 556 U.S. at 678). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

**III.    Discussion**

In the operative complaint, Plaintiffs assert the following claims under 42 U.S.C. § 1983 against Defendants:[2] (1) failure to protect from harm (against Defendants Ramirez and Bray); (2) failure to provide medical care (against Defendants Ramirez and Bray); (3) deprivation of the Plaintiffs' right to familial relationship (against Defendants Ramirez and Bray); (4) *Monell* violations (against County of Kern and KCSO); and (5) supervisory liability (against Defendants Youngblood, Bittle, and Kochanski). *See* (Doc. 27 at 22-42). Plaintiffs also assert the following state law claims against County Defendants: (6) negligence – wrongful death (against all Defendants); (8) Cal. Gov. Code § 845.6 (against all Defendants); (9) Cal. Civ. Code § 52.1 (against all Defendants); and (10) declaratory relief (against all Defendants). *See id.* at 42-50. Plaintiffs' final cause of action, (7) negligence – medical malpractice, names only "Doe" Defendants.

The Court addresses Plaintiffs' claims sequentially below.

---

[2] When referring to causes of action in the operative complaint by number, the Court shall use the numbering set forth herein.

**A.  Federal Claims Against Individual Defendants**

*i.  Legal Standard*

To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)).    This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (noting that pretrial detainees' "rights arise under the Fourteenth Amendment's Due Process Clause"). Relevant here, the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual defendant are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (alteration in original; footnote, citation, and internal quotation marks omitted); *see Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The Supreme Court has explained that there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as ... the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991);

*see also Gordon*, 888 F.3d at 1124 ("we have long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way").

Thus, to bring a pretrial detainee's failure to protect or inadequate medical care claim under the Fourteenth Amendment, a plaintiff must establish the same four factors as noted above. *Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071. In contrast to the knowing and purposeful state of mind in the first element, the remaining elements are subject to an objective standard. *See Castro*, 833 F.3d at 1070-71. As noted *supra*, the third element must be viewed on each case's particular facts and circumstances, and the plaintiff must prove the defendant acted with "more than negligence but less than subjective intent – something akin to reckless disregard." *Sandoval*, 985 F.3d at 669 (quoting *Castro*, 833 F.3d at 1071).

The Fourteenth Amendment also protects liberty interests in the companionship between parents and children. "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "Only official conduct that shocks the conscience is cognizable as a due process violation … A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* (citations and quotations omitted).

### ii. Analysis – First and Second Causes of Action

The same legal standard governs Plaintiffs' first and second causes of action (failure to protect and failure to provide medical care, respectively). As a preliminary matter, Plaintiffs include in the first cause of action assertions against Defendants Youngblood, Bittle, and Kochanski relating to municipal and supervisorial liability claims. Plaintiffs do not include allegations against these Defendants in the first (or second) cause of action that arise out of their individual actions against Decedent and, thus, the Court will proceed to analyze such claims under municipal and supervisorial liability *infra*. *See* (Doc. 27 at 23-25).

Plaintiffs allege that Defendants Ramirez and Bray "did not take any reasonable available

measures to abate or reduce the risks [Decedent] faced," had sufficient means to take protective measures, and "deliberately disregarded the hazards and risks posed to persons incarcerated at the Mojave Substation Jail." (Doc. 27 ¶¶ 79-81).

1.    Defendant Bray

Plaintiffs allege that, at the time of the events at issue, Defendant Bray was a classifications officer for KCSO and was tasked with carrying out KCSO policies and procedures and for ensuring inmate safety by way of proper housing and classification. *Id.* ¶ 23. Plaintiffs assert that Decedent met with Defendant Bray upon booking and "expressed concerns regarding his substance abuse." Plaintiffs allege that, "[d]espite obvious signs that [Decedent] … suffered from substance abuse," Decedent was placed in general population without any designation regarding his medical/mental health condition that would alert carers to the fact that he required further monitoring and treatment. *Id.* ¶ 35. These are the only factual allegations advanced by Plaintiffs in support of the claims against Defendant Bray.

Plaintiffs do not plead sufficient facts to permit the drawing of any reasonable inference that Defendant Bray was aware of Decedent's heightened risk of suicide or suicidal ideations. Plaintiffs do not allege that, for instance, Decedent disclosed to Defendant Bray that his substance abuse could result in a heightened risk of suicide or self-harm. And Plaintiffs do not allege Defendant Bray conducted an improper or deficient interview with Decedent. Instead, Plaintiffs allege in a conclusory fashion that Decedent showed "obvious signs" he suffered from mental health and substance abuse issues without identifying facts as to what the signs were and why they would have been reasonably apparent to Defendant Bray.

In opposition to Defendants' motion, Plaintiffs argue that "Defendants knew or should have known that [Decedent] suffered from substance abuse," but Decedent was "placed in general population" without designation regarding his health condition and "never underwent an initial medical and/or mental health screening while in-custody"; shortly thereafter, Decedent was "housed alone where he ultimately fashioned a noose to hang himself which was observed on surveillance footage." (Doc. 35 at 12-13). Even assuming such an argument adequately is supported by the general allegations in the FAC, Plaintiffs set forth no facts asserting that any such

7

failure caused Decedent's harm.  Additionally, Plaintiffs allege no facts in the FAC nor in their opposition briefing regarding Defendant Bray's having seen or having been obligated by duty, policy or otherwise to view surveillance footage such that he should have observed Decedent's actions within his cell.

Thus, Plaintiffs fail to adequately plead that Defendant Bray did not take reasonable available measures to abate substantial risk, even though a reasonable officer in his circumstances would have appreciated the high degree of risk involved and making the consequences of Defendant Bray's conduct obvious.  *See, e.g.*, *Hernandez v. Cnty. of Santa Clara*, No. 19-cv-07888-EJD, 2020 WL 3101041, at *4 (N.D. Cal. June 11, 2020) ("As to the initial intake decision, Plaintiff alleges that Aguilar had suicidal ideations.  Assuming, as the Court must, that Aguilar did in fact have suicidal ideations, there is no indication that County intake officers were aware of those suicidal ideations.  Plaintiff does not allege, for example, that Aguilar disclosed his ideations to the intake officers, who then ignored them.  Nor does Plaintiff allege that the unnamed officers failed to discover Aguilar's suicidal ideations because they did not conduct a proper intake interview.").

### 2.  Defendant Ramirez

Plaintiffs allege that, at the time of the events at issue, Defendant Ramirez was a corrections deputy for the KCSO, assigned to work as a floor deputy at the time Decedent was found unresponsive in his cell, and was responsible for carrying out KCSO policies and procedures and ensuring inmate safety.  (Doc. 27 ¶ 22).

Plaintiffs allege that, on September 3, 2023, Decedent was housed alone and, between 11:52 a.m. and 12:07 p.m., Decedent was "observed on surveillance footage fashioning a noose around his neck while attempting to find a location in his cell to affix the other end."  At approximately 1:03 p.m., Decedent was "observed hanging with a shoestring tied around his neck with the other end affixed to the railing of his bunk bed."  Decedent was found in the cell at approximately 1:29 p.m. by Defendant Ramirez.  Decedent was unresponsive.  *Id.* ¶¶ 36-38.

At approximately 1:30 p.m., Defendant Ramirez "opened [Decedent's] cell door to begin administering CPR and other lifesaving measures.  These lifesaving measures came too late, and the paramedics arrived shortly thereafter at 1:38 p.m."  Decedent was transported to Antelope

Valley Medical Center and was pronounced dead the following day, September 4, 2023, at 6:43 a.m. *Id.* ¶ 40. Defendant Ramirez was "responsible for ensuring the supervision and monitoring of inmates at the Mojave Substation Jail including [Decedent]." *Id.* ¶ 41.

Plaintiffs do not allege in the operative complaint either that Defendant Ramirez had prior contact with Decedent or that he had been informed or otherwise had reason to know Decedent necessarily was at a heightened risk of harm. "To make out [their] claim of a constitutional violation, Plaintiff[s] must show that Defendants made these decisions with 'reckless disregard' of an imminent risk that [Decedent] would commit suicide." *Hernandez*, 2020 WL 3101041, at *4. Plaintiffs do not allege that Ramirez, as floor deputy, was observing, or should have been observing, the security footage at the time before or during the incident and failed to act.

Plaintiffs plead only that Defendant Ramirez found Decedent hanging in his cell and began administering lifesaving measures. Plaintiffs allege no facts setting forth Ramirez's knowledge of a heightened risk and a "reckless disregard" of that risk or that would permit the drawing of a reasonable inference of such. *Cf. NeSmith v. Olsen*, 808 F. App'x 442, 445 (9th Cir. 2020) (noting that where deputies observed a rope hanging from the decedent's light on the night before his suicide, "the rope presented a clear warning that [decedent] presented an imminent suicide risk. Every reasonable official would [have understood] that failing to recognize that risk violated [decedent's] rights.") (citations and quotations omitted).

### iii. *Analysis – Third Cause of Action*

The Court finds that Plaintiff's third cause of action fails against Defendants Ramirez and Bray for the same reasons as noted above. Namely, Plaintiffs have failed to sufficiently alleged facts demonstrating that either Defendant exhibited deliberate indifference. *See Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016) ("Recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation. Therefore, because there is no evidence that either Undersheriff Mineau or Lassen County was deliberately indifferent to Parker's serious medical needs, Schwarz's claim for loss of familial association—which is predicated on their purportedly unconstitutional care of Parker—likewise fails as a matter of law.") (citation omitted).

### B.  Federal Claims Against County Entities

#### i.  Legal Standard

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*  Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort."  *Monell*, 436 U.S. at 691.  This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom."  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted).  A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy.  *See Long*, 442 F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.  *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

10

party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

"Under Ninth Circuit precedent, [a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations.  In an 'omission' action, a plaintiff must show the municipality's policy of inaction amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Fosbinder v. Cnty. of San Diego*, No. 24-cv-733-RSH-SBC, 2024 WL 4631275, at *10 (S.D. Cal. Oct. 30, 2024) (alterations in original; quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

### ii.  Analysis – Monell Claims

Defendants seek dismissal of Plaintiffs' fourth cause of action along with *Monell* claims they argue are included within the first, second, third, and fifth causes of action. *See* (Doc. 34-1 at 22-23).

Plaintiffs allege that the County and high-level supervisors such as Defendant Youngblood "knew or should have known of a history of years of notice of ongoing failure to provide inmates indicated and timely reasonable medical/mental health care," "inadequate and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside hospitals or other mental health programs," and "failure to take corrective measures, including ignoring judicial orders to abate or take corrective action …" (Doc. 27 ¶ 50).  Plaintiffs also allege that, in 2023, KCSO jails have recorded 11 in-custody deaths, including five from natural causes and six from suicide. *Id.* ¶ 52.  Plaintiffs further plead that, from January 2008 through December 2023, 22 inmates have died by suicide within the jails of the County of Kern. *Id.* ¶ 54.  Plaintiffs provide ten other instances dating from 2020 to 2023 where individuals died while detained in County facilities as a result of suicide, or circumstances suggestive of suicide. *Id.* ¶¶ 55-65.

Defendants argue that, where a plaintiff fails to adequately plead deprivation of a constitutional right, the *Monell* claims fail as a matter of law. (Doc. 34-1 at 23; citing *Cavanaugh*

11

*v. Cnty. of San Diego*, No. 3:18-cv-02557-BEN-LL, 2020 WL 6703592, at *36 (S.D. Cal. Nov. 12, 2020), *judgment entered*, 2020 WL 6702029 (Nov. 13, 2020), *and aff'd*, No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021)).

In *Cavanaugh*, the Court of Appeals reasoned that, "[b]ecause the complaint did not adequately plead a constitutional violation by the individual defendants, the district court correctly dismissed the *Monell* claim against San Diego County." *Cavanaugh*, 2021 WL 6103115, at *1 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). It follows that, even if the *Monell* allegations in the complaint would by themselves be sufficient to state a *Monell* claim against the County, the failure of Plaintiffs to plead any constitutional violation by individual Defendants results in a failure of any such *Monell* claim. *Cf. Est. of Kamara v. Cnty. of San Diego*, No. 25-cv-0226-AJB-VET, 2026 WL 751429, at *6 (S.D. Cal. Mar. 17, 2026) (denying dismissal of *Monell* claims where defendants did not move to dismiss underlying deliberate indifference claims, noting the FAC asserts a "longstanding custom of arresting [] intoxicated or mentally ill individuals rather than diverting them to hospitals," that the "Department has a custom and practice" of such arrests, that "deputies frequently arrest and jail" such individuals, and "County was aware" of the pattern of deaths therefrom, with plaintiffs alleging 20 such deaths over an 11-year period).

The Court finds that, as Plaintiffs have failed to plead any underlying constitutional violations by the individual Defendants, Plaintiffs' *Monell* claims fail. *See, e.g., Harris v. Cnty. of San Diego*, No. 3:24-cv-2117-JES-KSC, 2025 WL 2441046, at *6 (S.D. Cal. Aug. 25, 2025) ("Although Plaintiff alleged constitutional violations against Sheriff Martinez and doe defendants, such claims are not adequately pled, as stated above. As discussed above, Plaintiff fails to allege a violation of his constitutional rights by any individual. Therefore, Plaintiff's *Monell* cause of action against the County is [dismissed].").

Additionally, any *Monell* claims included within the first, third, and fifth causes of action are brought against improper defendants. The first and third causes of action are brought against individual Defendants, not municipal entities, and thus include improper defendants for any *Monell* claims. The fifth cause of action is brought against the supervisory Defendants, sued in their individual capacity. The fifth cause of action, thus, also includes improper defendants for any

*Monell* claims.  Though Defendants' motion seeks dismissal of *Monell* claims within the second cause of action, Plaintiffs do not allege any such *Monell* claims within the second cause of action. *See* (Doc. 27 at 25-27).

Therefore, the *Monell* claims included in the first, third, fourth, and fifth causes of action are subject to dismissal.

### C. Federal Claims Against Supervisory Defendants

#### i. Legal Standard

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676-77; *see, e.g.*, *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (noting that liability attaches if the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that a subordinate did"), *overruled on other grounds by Castro*, 833 F.3d at 1070; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### ii. Analysis

Plaintiffs bring supervisory liability claims pursuant to section 1983 against certain Defendants. (Doc. 27 at 39-42). Plaintiffs allege that Defendant Youngblood should have known of years of "ongoing failure to provide inmates … medical/mental health care," "inadequate and/or incompetent staffing," "inadequate cells and beds," "inadequate provision of health care," and "failure to take corrective measures." Plaintiffs allege that Defendant Youngblood was on notice of said deficiencies and the "number of lawsuits against the [County] … and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference …" *Id.* ¶ 50.

Plaintiffs further allege that Defendants Bittle, Kochanski, and Youngblood failed to properly hire and train the employees of their agencies; failed to monitor, investigate, and discipline employees; and ratified unconstitutional customs, policies, practices, and procedures. These acts or omissions, Plaintiffs allege, were a proximate cause of the deprivations that led to violation of Decedent's constitutional rights. *Id.* ¶¶ 129-136. In support of these allegations, Plaintiffs plead only the same facts as noted *supra* in subsection (B)(ii) discussing the *Monell* claims, namely, prior cases of in-custody deaths and suicides. Plaintiffs' primary contention is that, as Sheriff, Defendant Youngblood's inaction and acquiescence resulted in constitutional deprivations and the actions or omissions of the individual Defendants were ratified by Defendants Bittle and Kochanski. *See id.*

First, as noted *supra* in subsection (A)(ii), Plaintiffs fail to plead any cognizable claims for relief against the individual Defendants. It follows that Plaintiffs, thus, fail to adequately allege any acquiescence from the supervisory Defendants in such claims. Second, Plaintiffs plead no facts

14

as to Defendant Perez, aside from his position as a detentions sergeant at Mojave Substation Jail with responsibility for administration and oversight of the facility, including as to KCSO staff, inmate safety, and promulgation of policies and procedures and allowance of practices and customs. *Id.* ¶ 21.  Plaintiffs identify in the complaint's allegations no actions or inactions undertaken by Defendant Perez; indeed, Plaintiffs do not even mention Defendant Perez in their fifth cause of action. *See id.* at 39-42.  Third, Plaintiffs do not set forth any identifiable policy, custom, or practice implemented by any supervisory Defendant that was so deficient that the policy itself is a repudiation of the constitutional rights at issue and is the moving force of the constitutional violations alleged herein.  Rather, Plaintiffs advance only conclusory and general allegations that the supervisory Defendants ratified unconstitutional policies.  Fourth, the factual pleadings offered by Plaintiffs in support of the *Monell* claims do not, by themselves, support supervisory liability claims.  To credit such allegations standing alone as supporting supervisory liability would, in effect, impose vicarious liability, which is impermissible in section 1983 actions.  *See Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) ("Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quotation omitted).  In any event, the Court has found that the *Monell* claims fail, as well, for Plaintiffs' failure to plead any cognizable claims against the individual Defendants.

Thus, Plaintiffs fail to plead cognizable claims against Defendants Bittle, Kochanski, Perez, and Youngblood under a theory of supervisory liability.  *See, e.g.*, *Keates*, 883 F.3d at 1243 ("The complaint here does not allege that Carter was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that Carter promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused Koile's allegedly unconstitutional conduct.  These allegations do not suffice to state a claim of supervisory liability."); *Est. of Miller v. Cnty. of Sutter*, No. 2:20-cv-00577-KJM-DMC, 2020 WL 6392565, at *14 (E.D. Cal. Oct. 30, 2020) ("The complaint here does not allege the Sheriff made any decisions about Miller's care.  It does little more than recite the elements of a claim for

supervisory liability."); *Kidwell-Bertagnolli v. Cnty. of Sonoma*, No. 20-CV-03291-JSC, 2020 WL 4901197, at \*4 (N.D. Cal. Aug. 20, 2020) ("These allegations, however, do not indicate that Sheriff Essick was 'directly involved in the allegedly unconstitutional conduct' which resulted in Mr. Bertagnolli's death or that 'he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that [Sheriff Essick] promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused [Deputy Ordaz and Deputy 1-10's] allegedly unconstitutional conduct.'") (alterations in original; quoting *Keates*, 883 F.3d at 1243).

### D. Qualified Immunity

#### i. Legal Standard

The doctrine of qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating a claim of qualified immunity, a court must determine whether, (1) taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and (2) if so, whether the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In its qualified immunity analysis, a court may use either prong as its starting point and, thus, exercise its "discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021).

Under the first prong of the analysis, "whether a constitutional right was violated … is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009); *see Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (explaining that under the first prong of the qualified immunity analysis, the court considers whether the facts show a violation of a constitutional right). In contrast, "the 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); *see Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," meaning "it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)). Stated differently, "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)) (citation omitted). A section 1983 plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct. *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023) ("There is no analogous burden on § 1983 defendants to find factually on-point cases clearly establishing the lawfulness of an officer's actions. Nor must § 1983 defendants come forward with precedent showing that the unlawfulness of their conduct was not clearly established."); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

"For a constitutional right to be clearly established, a court must define the right at issue with specificity and not … at a high level of generality." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (citation and internal quotations omitted). When identifying the right that was allegedly violated, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than all of the factual circumstances surrounding the alleged violation. *See Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092–93 (9th Cir. 1998). "The Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

While a defendant may raise a qualified immunity defense at an early stage in the proceeding, the defense may not be amenable to dismissal by way of a motion made pursuant to Rule 12(b)(6) where facts necessary to establish the affirmative defense implicate matters outside the complaint or disputed issues of fact. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999). Nevertheless, a qualified immunity defense properly may be resolved by a Rule 12(b)(6) motion bearing in mind that, on a motion to dismiss, a court must accept the allegations in the complaint

as true when determining whether a defendant is entitled to immunity. *See Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023); *see also Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

### ii. Analysis

It is plain that, at the time of the events at issue, the law was clearly established that pretrial detainees had a Fourteenth Amendment right to be free from deliberate indifference to their medical needs, including the risk of suicide. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060; *Wright v. Dunne*, No. 15-CV-02671-TLN-CKD, 2020 WL 977963, at *8 (E.D. Cal. Feb. 28, 2020) ("The Court agrees that there exists a clearly established right to be free from deliberate indifference to serious mental health needs, including risk of suicide.") (citing *Clouthier*, 591 F.3d at 1245)). However, this general statement of law does not define in this case the applicable constitutional right at issue for purposes of determining the applicability of qualified immunity. *See Gordon*, 6 F.4th at 968; *Watkins*, 145 F.3d at 1092-93.

Plaintiffs bear the burden of proof to show that the rights allegedly violated were clearly established at the time of the alleged misconduct. *See Hopson*, 71 F.4th at 708. However, Plaintiffs cite to no authority in support of their assertion that Defendants are not entitled to qualified immunity. *See* (Doc. 35). The Court has conducted an independent review of relevant authority and finds that, under the facts as pled in the operative complaint, the County Defendants are entitled to qualified immunity.

In *Taylor v. Barkes*, 575 U.S. 822 (2015), the Supreme Court reversed the Third Circuit's holding that the Eighth Amendment granted prisoners the "right to the proper implementation of adequate suicide prevention protocols." *Taylor*, 575 U.S. at 824. Relevant Ninth Circuit precedent holds similarly, namely, that pre-trial detainees have a right to be "free from deliberate indifference to their serious risk of suicide but not a right to suicide screening or prevention protocols." *Est. of Funabiki by & through Funabiki v. Cnty. of Whitman*, No. 2:21-cv-00089-MKD, 2024 WL 4425682, at *11 (E.D. Wash. Oct. 5, 2024) (citing cases); *see Germaine-McIver v. Cnty. of Orange*, No. SACV 16-01201-CJC (GJSx), 2018 WL 6258896, at *11-12 (C.D. Cal. Oct. 31, 2018) ("The

18

Ninth Circuit has also not clearly established any right to a certain standard of suicide prevention protocols … *Cabrales* and *Conn* fail to develop any right in such a concrete and factually defined context to make it obvious to all reasonable government actors …") (quotation and citation omitted) (referencing *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988), *cert. granted, judgment vacated*, 490 U.S. 1087 (1989), *and opinion reinstated*, 886 F.2d 235 (9th Cir. 1989), & *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *and opinion reinstated*, 658 F.3d 897 (9th Cir. 2011)); *NeSmith v. Cnty. of San Diego*, No. 15cv629 JLS (JMA), 2016 WL 4515857, at *6 (S.D. Cal. Jan. 27, 2016) (finding that "the Supreme Court was clear in *Taylor* that cases holding that reckless or deliberate indifference to suicidal tendencies of particular inmates do not, for purposes of qualified immunity, establish an affirmative obligation to implement a government entity-wide suicide prevention policy").

As noted *supra*, Plaintiffs have failed to advance any cognizable claims of deliberate indifference to Decedent's serious risk of suicide by the individual Defendants. At the time of the events set forth in the operative complaint, clearly established law did not obligate the individual Defendants to conduct certain specific screening or prevention protocols. As such, under the facts as pled in the operative complaint, Defendants Ramirez and Bray are entitled to qualified immunity.

Regarding supervisory Defendants Bittle, Kochanski, Perez, and Youngblood, Plaintiffs assert only vague allegations of failure to properly hire, train, and discipline employees; promulgation of deficient policies, customs, or practices; and ratification of unconstitutional policies, customs, or practices. At the time of the events set forth in the operative complaint, clearly established law did not obligate the supervisory Defendants to implement a specific, or superior, suicide treatment or prevention policy. It follows that, under the facts as pled in the operative complaint, Defendants Bittle, Kochanski, Perez, and Youngblood are entitled to qualified immunity. *See NeSmith*, 2016 WL 4515857, at *7 ("Although particular government actors are obligated not to act with deliberate indifference to a particular inmate's suicidal ideations, based on *Taylor*, that does not clearly establish a broader duty for government entities to implement a suicide prevention policy that meets certain unspecified standards.").

**E.  State Law Claims**

***i.  Negligence – Wrongful Death and Medical Malpractice***

A claim for negligence under California law requires a plaintiff to show that the defendant (1) had a legal duty to use reasonable care; (2) breached that duty; and that (3) the breach was the proximate cause of (4) the plaintiff's injury. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). "In California, prison officials owe detainees a duty to protect them from foreseeable harm." *Cotta v. Cnty. of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017) (citing *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231 (2008)).  Unless the law provides otherwise, public employees are liable to the same extent as private persons, and "public entities are generally liable for injuries caused by the negligence of their employees acting in the scope of their employment." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013).  The Court acknowledges that the standard of culpability for a negligence claim is a "much lower level" than the standard for a deliberate indifference claim. *Cravotta v. Cnty. of Sacramento*, 717 F. Supp. 3d 941, 967 (E.D. Cal. 2024) (citing *Castro*, 833 F.3d at 1071).

Similarly, a claim for medical malpractice requires a plaintiff to show the defendant had "(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise, (2) a breach of the duty, (3) a proximate causal connection between the negligent conduct and the injury, and (4) resulting loss or damage." *Allphin v. Peter K. Fitness, LLC*, 78 F. Supp. 3d 987, 992 (N.D. Cal. 2015) (citing, *inter alia*, *Chakalis v. Elevator Sols., Inc.*, 205 Cal. App. 4th 1557, 1572 (2012)).

First, Plaintiffs do not oppose dismissal of the seventh cause of action for negligence – medical malpractice.  (Doc. 35 at 17).  Thus, the seventh cause of action is subject to dismissal.

Second, Plaintiffs assert that Defendant Ramirez had "ample opportunity to observe clear signs of [Decedent's] acute suicidality," as Decedent was "fashioning a noose around his neck which was captured by the surveillance camera," and both Defendants Ramirez and Bray breached their duty of care to Decedent. *Id.*  Plaintiffs allege in the complaint that, at the time of the events at issue, Defendant Ramirez was a corrections deputy for the KCSO, assigned to work as a floor deputy at the time Decedent was found unresponsive in his cell, and was responsible for carrying

out KCSO policies and procedures and ensuring inmate safety.  (Doc. 27 ¶ 22).  Decedent was housed alone and, between 11:52 a.m. and 12:07 p.m., Decedent was "observed on surveillance footage fashioning a noose around his neck while attempting to find a location in his cell to affix the other end."  At approximately 1:03 p.m., Decedent was "observed hanging with a shoestring tied around his neck with the other end affixed to the railing of his bunk bed."  Decedent was found in the cell at approximately 1:29 p.m. by Defendant Ramirez.  *Id.* ¶¶ 36-38.

As for Defendant Bray, Plaintiffs allege that, at the time of the events at issue, Defendant Bray was a classifications officer for KCSO and was tasked with carrying out KCSO policies and procedures and for ensuring inmate safety by way of proper housing and classification, that Decedent met with Defendant Bray upon booking and "expressed concerns regarding his substance abuse," and "[d]espite obvious signs that [Decedent] … suffered from substance abuse" Decedent was placed in general population without any designation regarding his medical/mental health condition that would alert carers to the fact that he required further monitoring and treatment.  *Id.* ¶¶ 23, 35.

Plaintiffs do not allege that either Defendants Ramirez or Bray failed to discharge their duty to take some mandatory action in the lead-up to Decedent's death.  For instance, Plaintiffs do not assert that Ramirez, by virtue of his position as a floor deputy, was required to view surveillance footage at certain intervals and did not do so, nor that Ramirez failed to conduct a safety check.  As to Defendant Bray, Plaintiffs do not assert that Bray failed to, for instance, properly conduct the interview with Decedent, provide Decedent a visual indicator regarding his condition, or affirmatively notify other staff as to Decedent's status as per some applicable authority.  Thus, the Court finds these allegations insufficient to state a cognizable claim of negligence as to Defendants Ramirez and Bray and, therefore, the County and KCSO.  *See* Cal. Gov't Code § 815.2; *Hayes*, 57 Cal. 4th at 629; *see Cravotta*, 717 F. Supp. 3d at 967 ("While prison officials may owe detainees a duty to protect them from foreseeable harm, Plaintiff has failed to allege how the Officer Defendants breached that duty here, or how that breach caused Plaintiff injury.  Plaintiff has not alleged the Officer Defendants failed to conduct direct-view safety checks, or failed to administer life saving measures they were medically trained to administer.  Plaintiff has also not alleged how

any such measures could have produced a different outcome.").

As to Defendants Bittle, Kochanski, Perez, and Youngblood, Plaintiffs' only relevant allegations in the FAC are those noted *supra* regarding supervisory liability.  Without more, the Court cannot discern any theory of negligence cognizable against said Defendants.  *Cf. Cravotta*, 717 F. Supp. 3d at 968 (finding cognizable negligence claim where complaint sufficiently alleged deliberate indifference and a breach of the duty of care regarding classification and housing against "Doe" defendants and that the sheriff had knowledge of such repeated failures and knew of safety risks inherent in the errors).  Plaintiff fails to allege what duty was breached by supervisory Defendants and, importantly, how any such breach caused Decedent's injury and/or damages.

### ii.   California Government Code § 845.6

California Government Code § 845.6 "imposes liability on the public employee and public entity when: (1) the public employee knows or has reason to know of the need, (2) for a prisoner's immediate medical care, and (3) fails to take reasonable action to summon such medical care. Liability under section 845.6 is established by serious and obvious medical conditions requiring immediate care." *Borges v. City of Eureka*, No. 15-cv-00846-YGR, 2017 WL 363212, at *18 (N.D. Cal. Jan. 25, 2017) (internal quotations and citations omitted) (citing *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993), & *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013)).

A public employee and public entity are liable under § 845.6 only for a failure to summon medical care.  Any failure to provide further treatment, or to ensure further diagnosis, is not actionable under § 845.6.  *Castaneda*, 212 Cal. App. 4th at 1072.  Under § 845.6, a public entity is vicariously liable for the acts of its employees within the scope of their employment.  *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019) (citing Cal. Gov't Code § 815.2).

Here, Plaintiffs do not identify any basis for their § 845.6 claims aside from the alleged federal constitutional violations.  Plaintiffs do not plead any facts showing that Defendants failed to summon medical care despite knowing, or having a reason to know, of such immediate need.  As such, Plaintiffs fail to bring any cognizable claims under § 845.6 against any Defendant.

///

### iii.    California Civil Code § 52.1 ("Bane Act")

A plaintiff alleging a Bane Act claim "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015) (citing Cal. Civ. Code § 52.1).  The claim must allege facts that would allow an inference that the defendant had a specific intent to violate the constitutional right at issue.  *Id.* Specific intent may be shown by demonstrating that the defendant acted "in reckless disregard" of that right.  *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017).

Several district courts, including judges of this Court, "have adopted the position that a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs ... adequately states a claim for relief under the Bane Act because deliberate indifference claims extend far beyond ordinary tort claims and have been associated with affirmatively culpable conduct." *Cravotta*, 717 F. Supp. 3d at 964 (quotations and citation omitted) (citing cases).

Here, Plaintiffs do not identify any basis for their Bane Act claims aside from the alleged federal constitutional violations.  As noted *supra*, Plaintiffs fail to adequately allege cognizable claims against all individual and supervisory Defendants.  Thus, Plaintiffs fail to bring any cognizable Bane Act claims against them.  *See Cravotta*, 717 F. Supp. 3d at 965 ("However, as held above, Plaintiff has failed to sufficiently plead his deliberate indifference claim against the Officer Defendants.  Thus, the Court finds he has also failed to plead a Bane Act claim against the Officer Defendants, and the Bane Act claim against them is dismissed.").

Regarding the County of Kern and KCSO, pursuant to California Government Code § 815.2, Plaintiffs allege that they are vicariously liable for the acts or omissions of their employees committed within the course and scope of their employment.  (Doc. 27 ¶ 161).  However, Plaintiffs fail to cognizably plead any such acts or omissions.  Thus, Plaintiff's Bane Act claims against the County of Kern and KCSO fail.  *See Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018) ("Plaintiff argues that his complaint contains sufficient allegations against defendant Christianson so as to impose liability on the County.  This argument is unavailing

23

because, as already discussed above, plaintiff's complaint contains no factual allegations against defendant Christianson."); *cf. Brink v. Cnty. of San Diego*, No. 23-cv-1756 DMS (SBC), 2024 WL 3315992, at *8 (S.D. Cal. July 3, 2024) (discussing California statutory authority regarding county immunity from Bane Act claims, concluding that immunity does not attach where public employee knew or had reason to know that the prisoner was in need of immediate medical care and failed to take reasonable action to summon such care, and finding Bane Act claim against county sufficient where complaint alleged nurse defendants failed to summon medical care despite obvious symptoms).

### F. Declaratory Relief

"The Ninth Circuit has directed district courts faced with whether to entertain claims for declaratory relief to consider, among other factors, whether the claim will settle all aspects of the controversy or serve some other useful purpose." *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *9 (N.D. Cal. Apr. 13, 2015) (citing *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

Here, Plaintiffs set forth no independent useful purpose in their claim for declaratory relief that would not otherwise necessarily be answered upon adjudication of the other claims in the action. Plaintiffs assert that their allegations concerning inadequate training and supervision consist of ongoing risks for inmates in the custody of Defendants. *See* (Doc. 35 at 22-23). However, the rights of the Plaintiffs, the obligations of the Defendants, and the legal relations between the parties will be necessarily clarified upon adjudication of the claims brought pursuant to section 1983 and under state law, and regarding Plaintiffs' *Monell* allegations, assuming Plaintiffs can plead cognizable claims therefor. Thus, the claims for declaratory relief will be dismissed as to all Defendants. *See United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.").

### G. Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be

freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  However, courts may, in their discretion, choose to decline leave to amend due to futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a repeated failure to cure deficiencies by amendments.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010).  A court's discretion in denying leave to amend is particularly broad after plaintiff has already been afforded an opportunity to amend the complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, Plaintiffs request leave to amend if any portion of Defendants' motion is granted. (Doc. 35 at 23).  The Court finds that the above deficiencies may be remedied by amendment and will extend leave to amend.

**IV.     Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  The Defendants' motion to dismiss (Doc. 34) is GRANTED;

2.  All claims in the first amended complaint (Doc. 27) are DISMISSED without prejudice;

3.  Plaintiffs are GRANTED leave to amend the complaint;

4.  Within 14 days of entry of this order, Plaintiffs SHALL file any second amended complaint; and

5.  Defendants SHALL file their response to any second amended complaint within 14 days of service of the second amended complaint.  *See* Fed. R. Civ. P. 15(a)(3).

IT IS SO ORDERED.

Dated:   **July 2, 2026**                           _____

UNITED STATES MAGISTRATE JUDGE